**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. CR 03-1167-PHX-DGC |
| Plaintiff, | ) | |
| vs. | ) | **ORDER DENYING** |
| | ) | **MOTION TO SUPPRESS** |
| Donald Smith, | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant Donald Smith's Motion to Suppress Resulting from Illegal Arrest. (Dkt. 995.) The Government filed a response opposing Defendant's motion (dkt. 1046), to which Defendant filed a reply (dkt. 1141). For the reasons set forth below, Defendant's motion is denied.

**BACKGROUND**

Except where noted, the following facts are not in dispute. Defendant Smith has not sought an evidentiary hearing.

At approximately 2:20 a.m. on April 27, 2002, a fight occurred between armed members of the Hell's Angels Motorcycle Club ("HAMC") and the Mongols Motorcycle Club ("Mongols") at Harrah's Casino in Laughlin, Nevada. The brawl resulted in three deaths and numerous injuries.

According to Defendant, when officers responded to the incident he "was made to lie on the floor of the casino in handcuffs for several hours," after which he and other HAMC members were removed to another room in the casino before being taken to the

1 Laughlin police station. (Dkt. 995 at 3.) Defendant contends that these actions constituted
2 an arrest and that the arrest was not supported by probable cause. Defendant asserts that
3 he did not participate in the melee and offers in support Exhibit X, a compilation of video
4 feeds which track his activities at Harrah's before and during the incident. (Id. at 6.) The
5 video shows Defendant in the company of other HAMC members and then, presumably
6 during the course of the shootout, kneeling watchfully until ordered to the floor by officers
7 of the Las Vegas Metropolitan Police Department ("LVMPD"). The video does not show
8 Defendant carrying a weapon or taking any aggressive action.

9 In response, the Government indicates that detectives from the Gang Unit of the
10 LVMPD had observed Defendant, along with a large number of other HAMC members,
11 leave the Flamingo Resort and proceed to Harrah's where groups of HAMC and Mongol
12 members were already present. (Dkt. 1046 at 2.) Outside of Harrah's an officer had parked
13 his squad car and activated its lights. (Id.) The arriving HAMC members ignored the
14 police lights, left their motorcycles with the keys still in the ignition, entered the hotel, and
15 proceeded to Rosa's Cantina, a bar where HAMC members had gathered. (Id.) The
16 HAMC groups combined and encountered the Mongols. (Id.) A fight ensued. Shots were
17 still being fired when officers entered the casino. (Id. at 3.) The officers ordered everyone
18 to the floor while they carried out their investigation and the injured were tended to, a
19 process that took several hours. (Id.) According to the Government, all members of both
20 gangs were taken into custody, and all items indicating gang membership, including vests
21 and other clothing, were seized as evidence. (Id.) Defendant asserts that Mongols were
22 not arrested, were treated more favorably than HAMC members, and have never been
23 charged with crimes arising from the Laughlin fight.

## ANALYSIS

25 Although initial actions of the officers did not "automatically convert an
26 investigatory stop into an arrest that requires probable cause," Washington v. Lambert,
27 98 F.3d 1181, 1186 (9th Cir. 1996), for purposes of this analysis the Court will assume that
28

- 2 -

Defendant was arrested when he was ordered to lie on the floor and placed in handcuffs. The Government bears the burden of showing that the arrest was supported by probable cause and therefore did not violate the Fourth Amendment. United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1295 (9th Cir. 1988).

The Court must "examine whether the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime." United States v. Valencia, 24 F.3d 1106, 1108 (9th Cir. 1994); accord Michigan v. DeFillippo, 443 U.S. 31, 36 (1979); see United States v. Garza, 980 F.2d 546, 550 (9th Cir. 1992) (probable cause exists if, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime") (internal quotation marks and citations omitted). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). The probable cause standard requires a "reasonable ground for belief of guilt," not proof beyond a reasonable doubt. Pringle at 371 (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)). "The validity of an arrest does not depend on whether the suspect actually committed the crime." DeFillippo, 443 U.S. at 36.

In assessing probable cause, "[t]he court may take into account the experience and expertise of law enforcement agents who observed the defendant's activity." Id. In addition, a finding of "probable cause can rest upon the investigating agents' 'collective knowledge.'" United States v. Del Vizo, 918 F.2d 821, 826 (9th Cir. 1990) (citation omitted). Finally, seemingly innocent conduct may provide the basis for probable cause when viewed in the light of all the information known at the time of the arrest. United States v.

1  Rodriguez, 869 F.3d 479, 483 (9th Cir. 1989); United States v. Hoyos, 892, F.2d 1387, 1393
2  (9th Cir. 1989).

3    Applying these principles to the totality of the circumstances as they existed at the
4  time Defendant was handcuffed, the Court finds that a prudent person would have had
5  reason to believe that Defendant was involved in criminal activity.  While "a person's mere
6  propinquity to others independently suspected of criminal activity does not, without more,
7  give rise to probable cause," Ybarra v. United States, 444 U.S. 85, 91 (1979), here there was
8  more.  Observations leading to Defendant's arrest were made by members of the LVMPD
9  Gang Unit.  Officers knew Defendant was a member of the HAMC; that he and a large
10 group of HAMC members came to Harrah's from the Flamingo; that they entered Harrah's,
11 leaving their motorcycles at the entrance with keys in the ignition; that the fight with the
12 Mongols erupted shortly after their arrival; that the fight broke out in the area of Rosa's
13 Cantina; that Defendant was in the vicinity of Rosa's Cantina; that Defendant was wearing
14 HAMC colors; and that numerous injuries had resulted from the fight.  These facts did not
15 provide proof beyond a reasonable doubt that Defendant had committed a crime, but the
16 Court concludes that they did provide a reasonable basis for officers to believe Defendant
17 had been engaged in criminal activity.  See United States v. Collins, 427 F.3d 688, 692 (9th
18 Cir. 2005) ("contemporaneous association with known criminal activity contributes to a
19 finding of probable cause"); United States v. Hillson, 733 F.2d 692, 697 (9th Cir. 1984)
20 (association with others engaging in criminal activity can support probable cause where
21 the association and the criminal activity are contemporaneous or where the activity is
22 "such that it could not normally be carried on without the knowledge of all persons
23 present").

24    Defendant's warrantless arrest was supported by probable cause and did not violate
25 the Fourth Amendment.  Because the arrest was lawful, so was the search incident to
26 arrest.

27
28

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Resulting from Illegal Arrest (Dkt. 995) is **denied**.

DATED this 2nd day of February, 2006.

_____
David G. Campbell
United States District Judge